

FILED

2:47 pm, 9/16/24

**Margaret Botkins
Clerk of Court**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

---

A.M., a minor child, by and through her
parents and guardians, TYLER
MCKINNEY and KIMBERLY
GUSTAFSON,

        Plaintiffs,

      vs.

RIVERTON MEMORIAL HOSPITAL,
LLC, d/b/a SAGEWEST HEALTH
CARE; LANDER MEDICAL CLINIC;
LIFEPOINT HEALTH, INC.; JAN K.
SIEBERSMA, M.D.; and RACINE
HEADLEY, R.N.,

        Defendants.

Case No.  24-CV-0016-KHR

---

### ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [44]

---

This matter comes before the Court on the Renewed Motion to Dismiss for Lack of

Personal Jurisdiction filed by Defendant Lifepoint Health, Inc. [ECF No. 44]. Plaintiffs

oppose this Motion. This Court, being fully advised, denies Defendant's Motion.

### BACKGROUND

Plaintiffs Kimberly Gustafson and Tyler McKinney, by and through their minor

child A.M., sue SageWest Health Care Hospital and related entities and employees under

various theories of negligence. On December 11, 2017, Ms. Gustafson gave birth to A.M.

at SageWest Health Care Hospital in Lander, Wyoming. Plaintiffs allege that, during the childbirth, A.M. experienced fetal distress and suffered severe, permanent disabilities during birth as a result of hospital staff's failure to properly respond. In addition to the care team's negligence, Plaintiffs also attribute this failure to the financial and managerial decisions made by the hospital and LifePoint Health, Inc. ("LifePoint").

Defendant LifePoint moves to dismiss Plaintiffs' claims on the grounds that this Court does not have personal jurisdiction over it. LifePoint is a Delaware corporation with its principal place of business in Tennessee. LifePoint submits the affidavit of Dan Huffines, which attests that LifePoint does not own property in Wyoming, has no employees in Wyoming, conducts no business in Wyoming, and has no control over the everyday operations of SageWest, its separate subsidiary. Plaintiffs oppose the Motion and offer various SEC filings, public statements, lease agreements, and statements from local citizens.

## RELEVANT LAW

When a defendant files a motion to dismiss under Rule 12(b)(2), the "[p]laintiff bears the burden of establishing personal jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citation omitted). For the plaintiff to defeat a Rule 12(b)(2) motion to dismiss, they need only make a "prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. ... If conflicting affidavits of the parties collide, the Court will resolve all factual disputes in the

plaintiff's favor." *Eleutian Tech., LLC v. Global Educ. Techs., LLC*, Civ. 07–181–J, 2009 WL 10672360, *3 (D. Wyo. Jan. 23, 2009) (quoting *Behagen v. Amateur Basketball Ass'n of the U.S.*, 744 F.2d 731, 733 (10th Cir. 1984)). "The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). Wyoming's long-arm statute extends the jurisdictional reach of Wyoming courts as far as constitutionally permissible. Wyo. Stat. § 5–1–107. Therefore, the exercise of jurisdiction is permitted so long as it does not offend the Due Process Clause of the Fourteenth Amendment.

## RULING OF THE COURT

Plaintiffs assert general and specific jurisdiction over LifePoint, as well as jurisdiction under an alter ego theory. The Court addresses each potential source of jurisdiction.

Plaintiffs make several allegations regarding LifePoint's contacts in Wyoming. They allege that LifePoint leased land in Wyoming and acquired two hospitals between 1999 to 2000, that they hired employees and implemented systems in those hospitals, and that they publicly advertise their Wyoming hospitals. Plaintiffs attach LifePoint's SEC filings, which, they argue, tend to show that LifePoint provided all its hospitals, including those in Wyoming, with various management, capital, recruiting, and legal support. They also attach lease agreements allegedly showing that LifePoint entered into agreements regarding property in Wyoming that are set to expire in 2073.

However, the lease agreement does not mention LifePoint as a party. It is an assignment of a lease between NAHC of Wyoming and Lander Valley Medical Center, which is a "wholly-owned indirect subsidiary of LifePoint Hospitals, Inc." [ECF No. 54-10, at 1]. Therefore, the lease agreement does not support Plaintiffs' allegation that LifePoint leased land in Wyoming.  The various SEC filings are similarly unsupportive, because "LifePoint" explicitly includes LifePoint, Inc. and its subsidiaries. [ECF No. 54-7, at 3]. It therefore fails to aid the Court in determining which jurisdictional contacts apply to LifePoint, Inc. and which apply only to its subsidiaries, and does not support Plaintiffs' allegations regarding LifePoint, Inc.'s in-state contacts.

Plaintiffs also submit the affidavit of Ms. Gustafson, in which Ms. Gustafson attests that was she employed by LifePoint in 2018. According to the affidavit, she responded to a job posting under the name "LifePoint, Inc.", that she corresponded with LifePoint Health regarding the position, and that her offer of employment and related details all came from LifePoint. She participated in LifePoint's 401(k) plan. Defendants argue that Ms. Gustafson's affidavit is insufficient because it is not based on personal knowledge, but Ms. Gustafson's allegations that she was employed by LifePoint are based on her own knowledge. Taken as true, these attestations would tend to establish minimum contacts as to LifePoint.

Plaintiffs offer the public statements of LifePoint that they own and operate hospitals across the country, and that they provide "resources, management expertise, and operational support" to the hospitals it owns. These admissions are vague and do not give any concrete information as to the structure of LifePoint's relationship with its subsidiaries.

Furthermore, they fall within acceptable types of conduct in a normal parent-subsidiary relationship. *See U.S. v. Bestfoods*, 524 U.S. 51, 72 (1998) (discussing monitoring, supervision of financial decisions, and articulation of general policies and procedures as being "consistent with the parent's investor status" and generally not conferring jurisdiction).

The reactions of Riverton and Lander residents to the proposed merger are not well-pled evidence of minimum contacts because jurisdictional connections must be attributable to the entity the plaintiff seeks to hold liable. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). The letters expressing community frustration at the hospital merger are hearsay insofar as they are offered for the truth of what they say, and are therefore not part of this Court's jurisdictional analysis.

Plaintiffs point to the in-state activities of its employees, who attended community board meetings and engaged in communication surrounding the merger. Plaintiffs further allege that LifePoint made, and announced, the decision to merge its two Wyoming hospitals in 2014. Plaintiffs cite a series of exhibits to this effect, none of which seem to support their allegations. However, these allegations are not directly contradicted by Defendant's affidavit, and the Court must therefore accept them as true.

In summary, the Court analyzes Plaintiffs' prima facie showing of jurisdiction using the following allegations: that LifePoint hired Ms. Gustafson and directed employment opportunities at Wyoming residents, that LifePoint made the decision to merge the hospitals, that a LifePoint employee signed a Special Warranty deed for Wyoming

property, and that LifePoint employees engaged in community outreach surrounding the merger of the Wyoming hospitals.

**I.      The Court does not have jurisdiction under an alter ego theory.**

Plaintiffs plead jurisdiction under an alter ego theory. "Under the [alter ego doctrine] the corporate entity is disregarded and liability fastened on an individual who uses the corporation merely as an instrumentality to conduct his own personal business." *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir, 1974). In the context of a jurisdictional dispute, this means treating the contacts of the resident corporation as the contacts of the foreign parent. This is appropriate where "separation of the two entities has not been maintained and injustice would occur to third parties if the separate entity were recognized." *Id.*

Plaintiffs have alleged that LifePoint has exerted such a level of control over its Wyoming hospitals, but these allegations are contradicted by the affidavit of Dan Huffines, which attests that LifePoint exerts no control over the day-to-day operations of SageWest. [ECF No. 28-1, at 2]. Plaintiffs do not direct the Court to any evidence that such a disregard of corporate form existed. The Court, exercising its own judgment, similarly does not see the requisite level of control. As discussed above, the SEC forms are unhelpful in establishing personal jurisdiction because they do not distinguish between the activities of LifePoint and the activities of its subsidiaries. Accordingly, this Court holds that the alter ego doctrine does not apply.

**II.      The Court does not have general jurisdiction over LifePoint.**

The paradigm fora for general jurisdiction over a corporation are its place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). These are not exhaustive, but a court can assert jurisdiction over a foreign defendant only when "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). Plaintiffs have not met this standard. They allege relatively sparse contacts that mostly surround the merger, which does not meet the requirement that contacts be continuous and systematic. Plaintiffs fail to adequately plead that LifePoint owns property or conducts any constant business in Wyoming. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 412 (1984) (finding no general jurisdiction where defendant was not headquartered or incorporated in the forum state and did not own property or maintain an office there). They have not properly alleged contacts such that LifePoint could be considered essentially at home in Wyoming.

**III.     The Court has specific jurisdiction over LifePoint.**

Because general jurisdiction is unavailable, Plaintiffs must show that this Court has specific jurisdiction over LifePoint. In order to have specific jurisdiction, "the exercise of jurisdiction" must "comport with due process." *GCIU-Emp'r Ret. Fund v. Coleridge Fine Arts*, 700 Fed.Appex. 865, 868 (10th Cir. 2017). The requires finding that the defendant had minimum contacts with the forum state, and that the lawsuit arises out of those contacts. *Id.*

The Court finds that Plaintiffs' allegations are sufficient to meet the minimum contacts requirement. Here, LifePoint has "purposefully directed his activities at resident of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The required nexus is present because the alleged injuries are related to the merger of the hospitals. Plaintiffs claim that budgeting decisions were made as a direct result of the merger, and that those decisions affected the quality of care at the hospitals.

Further, Plaintiffs have adequately pled that finding jurisdiction would not violate "fair play and substantial justice." *Asahi Metal Industry Co., Ltd., v. Superior Court of California*, 480 U.S. 102, 113 (1987). Courts consider "1) the burden on the defendant, 2) the forum state's interest in resolving the dispute, 3) the plaintiff's interest in receiving convenient and effective relief, 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and 5) the shared interest of the several states in furthering fundamental substantive social policies." *OMI Holdings*, 149 F.3d at 1095. There is a factual dispute as to the extent of LifePoint's business practices in Wyoming, which has a significant effect on the reasonableness inquiry. If LifePoint did in fact solicit employees in Wyoming and send out of state employees to engage in community outreach in Wyoming, it is not unreasonable that they might be sued in Wyoming courts.

Defendants cite *Ortiz v. Riverton Memorial Hospital et al.*, a Wyoming state district court decision which held that the mere existence of a parent-subsidiary relationship was not enough to confer jurisdiction over LifePoint. [ECF No. 28-2, at 4]. However, as the court there noted, the plaintiff adduced no evidence that LifePoint had contacts with

Wyoming, other than a conclusory allegation that LifePoint "likely" had management control over the hospital. This is easily distinguishable, because here Plaintiffs have submitted evidence that LifePoint had minimum contacts with Wyoming, and that Plaintiffs injury arose from those contacts.

Defendants cite a myriad of cases to the effect that certain actions of a parent are insufficient to attribute to it the contacts of the subsidiary. However, this Court finds that it is because of LifePoint's own alleged contacts, not the contacts of its subsidiaries, that there is a factual dispute as to whether there is jurisdiction over it.

## CONCLUSION

For the forgoing reasons, the Court finds that Plaintiffs allege sufficient minimum contacts to confer specific jurisdiction over LifePoint. The Court therefore denies Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

NOW, THEREFORE, IT IS ORDERED Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is DENIED.

Dated this 16th day of September, 2024.

_____
Kelly H. Rankin
United States District Judge